CENTEL CELLULAR COMPANY,
Appellant,

v.

Debbie LIGHT, Appellee.

No. 12–91–00009–CV.

Court of Appeals of Texas,
Tyler.

April 27, 1995.

Rehearing Overruled June 5, 1995.

James T. Womack, G.R. (Randy) Akin, for appellant.

Bruce A. Smith, Gregory Gravczyk, for appellee.

### OPINION ON REMAND

HOLCOMB, Justice.

The dispute in this case arises from a covenant not to compete contained in an employment contract. Appellee, Debbie Light, ("Light") sued Appellant, Centel Cellular Company of Texas ("Centel"), successor in interest to United TeleSpectrum, Inc., alleging that the covenant not to compete which she had signed was unenforceable as an illegal restraint of trade. Light also sought damages from Centel for its interference with her attempts to obtain employment from other prospective employers. Both parties moved for summary judgment. The court denied Centel's motion, but granted a partial summary judgment in favor of Light, and held that Centel's covenant not to compete was unenforceable because it "was not ancillary to an otherwise valid transaction or relationship." The issue of tortious interference was heard by a jury. The jury held

that Centel had tortiously interfered with Light's ability to secure employment and awarded her damages in the amount of $22,500.00 and $11,250.00 attorneys fees. The trial court entered judgment in favor of Light; however, it disregarded the jury's award to Light for $11,250.00 in attorneys fees.

Appealing on ten points of error, Centel complained that the court erred when it granted Light a partial summary judgment and held that its non-competition agreement with Light was unenforceable. Centel's second point complained that the court erred when it denied its motion for summary judgment. In its fifth point, Centel challenged the legal sufficiency of the evidence to support the jury's finding that Centel was not justified in asserting its rights under the non-competition agreement. Reviewing the covenant not to compete under the guidelines in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex.1990), this Court sustained Centel's first and fifth points, overruled Centel's second point, and reversed and rendered a take-nothing judgment in favor of Centel. *See Centel Cellular Co. of Texas v. Light*, 841 S.W.2d 95, 100–01 (Tex.App.—Tyler 1992). In doing so, we held that the covenant not to compete was ancillary to an otherwise enforceable written employment agreement between the parties and that Light was not entitled to recover any damages for an enforceable agreement. *See Id.*

Light appealed our decision to the Texas Supreme Court. The Supreme Court relied upon Sections 15.50 and 15.51 of the TEXAS BUSINESS & COMMERCE CODE, which is known as the COVENANT NOT TO COMPETE ACT, and applied it to the facts of this case retroactively. The Supreme Court held that Light's non-competition agreement was unenforceable and reversed our decision. *See* TEX.BUS. & COM.CODE ANN. §§ 15.50–52 (Vernon Supp. 1994); *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642 (1994). Consequently, the Court remanded the cause for us to consider Centel's remaining points of error that we had not previously addressed. We will reverse and render.

The evidence presented at trial revealed that Light was hired by Centel in 1985 to sell paging devices because of her experience in sales and communication. As a result of her previous success in the field, Light brought to Centel an established customer base. In 1986 and 1987 Light was a top sales producer for Centel and was promised a promotion as sales manager. In late 1987, Centel was granted a license by the Federal Communications Commission to sell cellular mobile communication products in the Longview, Tyler, and Marshall area. At this time Centel entered into an employment agreement with Light that also included a non-competition clause. Centel explained the provision and its ramifications to Light and Light agreed to sign the contract.

At the end of 1987, Centel hired Laquita Allen as sales manager and the supervisor of Light. Shortly thereafter, Light's performance reviews and sales dropped significantly. As a result, Light resigned her position with Centel in May of 1988. Allen asked Light to reconsider her decision, but Light quit anyway. Light requested that Centel give her a favorable recommendation to prospective employers. Before and after Light resigned, she asked Centel to release her from the non-competition agreement so that she could obtain employment in the telecommunications field. Assuming that it was operating within a valid non-competition agreement, Centel repeatedly refused to release her, but it did give her a favorable reference to the Better Business Bureau, which resulted in Light's employment for a period of months.

Subsequently, Light was offered three job opportunities to sell cellular phones for agents of Centel. All of these employers were in the business of selling mobile telecommunication products. Light testified that she did not accept the jobs because of her concern that Centel would take legal action against her for violating the agreement she had signed with Centel. Centel did not contact any of the prospective employers of Light, but one of the employers contacted Centel on behalf of Light to ask if Centel would give her permission to work for them. Centel did not return the employer's phone call and did not otherwise respond to the employer's request. Approximately four and

one-half months after Light resigned, Light's attorney sent a letter to Centel asking that Light be released from the non-competition agreement. Light's attorney received a written response from Centel stating that it had no intention of releasing Light from the agreement.

In seven points, Centel contends that there was no evidence to support the jury's finding that Centel acted maliciously and prevented Light from obtaining employment with a prospective employer. Centel also argues that it was justified in refusing to release Light from her contract, because it only exercised its rights under the non-competition agreement. We agree.

■ When reviewing a "no evidence" point of error, we must consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury's findings, and we must disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex.1990). We must overrule the point of error if there is any evidence of probative force to support the finding. *Id.* The elements that Light had the burden to prove to support a claim against Centel for tortious interference with a prospective contract are:

1. a "reasonable probability" that Light would have entered into a contractual relationship;
2. that Centel acted maliciously by intentionally preventing the relationship from occurring with the purpose of harming Light;
3. that Centel was not privileged or justified in its actions; and
4. that Light was harmed or damaged as a result of the interference.

*DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990). For Light to successfully prove that Centel interfered with a prospective contract of employment, she had to prove that Centel did so intentionally and maliciously for the purpose of harming her.

■ In the area of tortious interference with contractual relations, "Malice" is defined as an unlawful act done intentionally and without justification or excuse. *Light v.*

*Transport Ins. Co.,* 469 S.W.2d 433, 440 (Tex. Civ.App.—Tyler 1971, writ ref'd n.r.e). Viewing the evidence which tends to support the verdict, the only evidence that supports the jury's finding that Centel interfered with any of Light's future job prospects can be summarized within three categories:

(1) Centel refused to release Light from the covenant not to compete agreement that she had signed with Centel.
(2) Centel reminded Light that she could not work as a salesperson in the communications field as a result of the agreement that she had signed with Centel; and
(3) Centel reminded Light that Centel had the right to file a lawsuit against her if she accepted employment with an agent of Centel or a competitor of Centel.

None of these acts are even arguably offensive considering that Centel and Light were working under the assumption that they had entered into a valid non-competition agreement. Light attempted to show that Centel's actions against her were malicious by offering evidence of a conflict that she had with her supervisor, Laquita Allen. Taking Light's testimony as true, Light stated that, even though her sales performance had been good before Allen came to work for Centel, Allen told Light that she would have to prove herself to Allen before she would be promoted to sales manager. Light told the jury that she was devastated by Allen's comment and felt that she would be better off working for another company and quit her job with Centel. When Light told Allen that she was resigning, Allen requested that Light reconsider. We fail to see how this testimony can be construed to support Light's claim that Centel intentionally, maliciously, prevented her from having a relationship with another employer. Her testimony had nothing to do with Centel's actions after she quit. To the contrary, Light's testimony only concerned matters that occurred while Light was still employed with Centel.

After she quit her job with Centel, Light had an opportunity to be employed by three employers in mobile telecommunications sales. Two of the three prospective employ-

ers were aware of the agreement not to compete that Light had signed. However, the employers offered Light a job anyway. Light decided not to take the jobs because of her concern that she would have to defend a lawsuit. Each of the prospective employers testified at trial that Centel never contacted them in any way in an attempt to discredit Light or to persuade them not to hire Light. Not only did Centel decline from pursuing any overt acts against Light, Light used Centel as a reference. Because of a favorable reference from Centel, Light was able to secure employment with the Better Business Bureau. Rather than attempting to preclude Light from seeking a job, Centel aided her in her pursuit of other employment. In December of 1988, while the agreement between Centel and Light was allegedly still in effect, Light went to work for a competitor of Centel. Centel never attempted to enforce its agreement with Light by filing a lawsuit against her.

Even after considering the evidence in the light most favorable to the verdict, there is no evidence in the record to support the jury's finding that Centel acted maliciously toward Light for the purpose of harming her. At best, the record shows that Centel asserted what it believed at the time to be a bona fide legal right within the context of an agreement that it had with Light. We therefore hold that there was an absence of evidence showing that Centel tortiously interfered with Light's attempts to secure employment with prospective employers. Points three, four, six, seven, eight, and nine are *sustained.* In view of our disposition of these points, we do not reach the remaining point of error or Light's cross-point.

The trial court's judgment is **reversed and judgment is rendered that Appellee take nothing.**