**John T. ASH, Bill Snider, George L. Betros and Stacy Joe Ash, Appellants,**

v.

**HACK BRANCH DISTRIBUTING COMPANY, INC. and Dudley Haas Distributing Company, Inc., Appellees.**

No. 10–99–322–CV.

Court of Appeals of Texas, Waco.

Aug. 1, 2001.

James R. Dunnam, Dunnam & Dunnam, L.L.P., Waco, for appellants.

Charles D. Olson and Alfred Mackenzie, Haley & Davis, P.C., Waco, for Hack Branch Dist. Co.

Michael G. Cosby, Pakis, Giotes, Page & Burleson, P.C., Waco, for Dudley Haas Dist. Co.

Before Chief Justice DAVIS, and Justices VANCE and GRAY.

## OPINION

DAVIS, Chief Justice.

The owners of several McLennan County restaurants and taverns filed suit against four beer distributors alleging violations of the Texas Free Enterprise and Antitrust Act of 1983 and tortious interference with existing and prospective business relationships. The court granted motions for summary judgment filed by Hack Branch Distributing Company, Inc. and Dudley Haas Distributing Company, Inc. and severed the plaintiffs' claims against the other two defendants. The plaintiffs claim on appeal that the court abused its discretion by overruling their objections to portions of the defendants' summary judgment evidence and that the court erred in granting the summary judgments because genuine issues of material fact exist on their claims.

## BACKGROUND

The plaintiffs/appellants include John and Stacy Ash (the Ashes), George Betros,

and Bill Snider. The defendants in the underlying suit consist of Hack Branch Distributing Company, Inc. ("Branch"), Dudley Haas Distributing Company, Inc. ("Haas"), Jack Hilliard Distributing Company, Inc. ("Hilliard"), and Brazos Beverages, Inc. ("Brazos"). Branch and Hilliard are the Anheuser–Busch distributors for McLennan and Brazos Counties respectively. Haas and Brazos are the Miller distributors for those counties respectively.

According to the record, major national breweries sell beer in Texas through the use of exclusive territorial distributors. Each brewery contracts with one distributor in each territory, giving that distributor the exclusive right to sell that brewery's product on the wholesale market in that territory. The territorial limits are strict, and the breweries prohibit each distributor from selling directly to retailers in other territories. Texas law, however, strictly honors the right of retailers to purchase beer from any distribution territory in the state. *See* TEX. ALCO. BEV.CODE ANN. § 102.53 (Vernon 1995). As a result, while a distribution agreement may validly prevent a distributor from delivering beer directly to retailers in another territory, it may not prevent a retailer from purchasing directly from a distributor in another territory and transporting the beer back into the retailer's home territory. *Id.*

Appellants' antitrust claims center around allegations that the owners of Branch and Haas have conspired to raise the wholesale price of beer in McLennan County and maintain the price at inflated levels. Appellants allege that the conspiracy is facilitated through the owners' membership in the McLennan County Wholesale Beer Distributors Association (the "Association"), which is composed entirely of McLennan County beer distributors. Appellants allege that the Association routinely holds closed meetings at which the members discuss and agree upon wholesale beer prices to be charged within McLennan County in violation of Texas antitrust law.

The Ashes further allege that Branch and Haas impermissibly exerted pressure on Hilliard and Brazos to prevent the Ashes from purchasing beer on the wholesale market in Brazos County. The Ashes contend that this conduct amounts to a tortious interference with prospective business relations between the Brazos County distributors and themselves.

### FACTS PERTINENT TO THE TORTIOUS INTERFERENCE CLAIM

In December 1994, Branch and Haas each announced a $2.00–per–keg price increase, scheduled to take effect on the same day. The Ashes claim that, during that time period, the wholesale price of beer kegs in Brazos County was approximately twenty dollars cheaper than in McLennan County. As a result, the Ashes traveled to Brazos County to purchase keg beer from J.J.'s, a wholesale store in Bryan. They testified by deposition that, prior to making the sale, the owner of the store verified the propriety of the sale with Brazos's vice-president and general manager Jim Pillans, who indicated that a sale to an extra-territorial retailer was permissible.

Pillans testified that Haas's general manager Mark SoRelle later contacted him and expressed concern about Bryan wholesalers selling beer to Waco retailers. Pillans told SoRelle that he would investigate the matter. He then contacted J.J.'s and verified his suspicion that the buyers about whom J.J. had previously inquired were the same buyers about whom SoRelle was concerned. Pillans testified that, after reviewing his contract with Miller, he concluded that he could not permit J.J.'s to

sell keg beer to the Ashes. He then called J.J.'s to inform its operators that he would stop selling to J.J.'s if it continued to sell beer to the Ashes.

When the Ashes were told that they could no longer purchase beer from J.J.'s, John Ash contacted the Texas Alcoholic Beverage Commission and confirmed that his attempt to purchase beer from a wholesaler outside the McLennan County territory was lawful. He then decided to attempt to purchase keg beer directly from Hilliard and Brazos. Due to his suspicions that these Brazos County distributors were engaging in illegal conduct, Ash secretly taped his conversations with the representatives of the distributors.

Ash initially attempted to purchase keg beer from Brazos. He testified that Pillans refused to sell him any beer. Pillans's deposition testimony confirms Ash's account and reflects that he refused to sell beer to Ash because he believed that Brazos's distributorship agreement with Miller prevented him from selling to anyone who would take the product out of Brazos's designated territory.

Ash then proceeded to Hilliard's where he presented his valid licenses and permits and sought to purchase keg beer. The receptionist referred Ash to the Sales Manager, Dave Smith. Smith acknowledged in his deposition that he was aware at this time that Ash was from McLennan County. While Ash was waiting to meet with Smith, Smith accepted a call from Hilliard president, Jack Hilliard, Jr. Ash also presented the affidavit of Larry Salter who stated that a Branch employee told him that someone from Hilliard called Branch while Ash was there regarding the fact that Ash was in Bryan attempting to purchase keg beer. In his deposition, Smith confirmed that he spoke with Jack Hilliard but denied speaking with anyone at Branch.

After speaking with Jack Hilliard, Smith told Ash that he would not sell him any beer. Ash testified that Smith, like Pillans, justified this refusal by indicating his belief that the distributorship agreement with Anheuser–Busch prevented him from selling to retailers outside the Brazos County territory. Smith further explained the decision as an "unwritten rule" between Anheuser–Busch distributors to honor each other's territory, and indicated that Jack Hilliard had prevented the sale because "he just didn't want to get into it with [Haskell]."

## FACTS PERTINENT TO THE ANTITRUST CLAIMS

Appellants allege that Appellees' attempts to illegally enforce their distribution districts is related to their participation in a conspiracy to fix the wholesale price of beer in McLennan County. In support of these contentions, Appellants allege several operative facts. Initially, Appellants note that the price of different brands of keg beer in McLennan County has been uniform throughout the relevant time periods. Appellants further contend that the uniform price is approximately twenty dollars higher than the price in other markets, such as Brazos County, and that there is significantly greater price competition in those areas.

Appellants attribute the pricing disparity to the existence of formal associations of beer distributors in those areas, such as McLennan County, in which the price of different brands is uniform. Although the stated purpose of these associations is charitable in nature, Appellants assert that the beer distributors use the monthly association meetings to illegally discuss pricing policies and enter price-fixing agreements. Appellants emphasize the fact that only the owners of the distributors are allowed to attend an association's meetings, and allege that at least one meeting has pre-

ceded each price increase that has gone into effect during the relevant time period. Appellants further note that without exception Branch has been the first in McLennan County to announce each price increase. In every instance, the other McLennan County distributors have issued announcements of identical increases which took effect on the same date as Branch's. Appellants contend that such uniform pricing is inconsistent with independent action and supports an inference of an agreement to fix prices.

## THE SUMMARY JUDGMENT MOTIONS

Haas contends in its summary judgment motion that it is entitled to judgment as a matter of law on Appellants' antitrust claim because they can produce no evidence to support the claim, because uniformity of prices standing alone is insufficient as a matter of law to establish an antitrust violation, and because, as Dudley Haas stated in his summary judgment affidavit, the sole basis for Haas's decision to increase prices has been, "in every single instance," the manufacturer's recommendation.[1]

Haas contends that it is entitled to judgment as a matter of law on the Ashes' tortious interference claim because this claim is derivative of their antitrust claim (on which Haas contends it is entitled to judgment as a matter of law as set out above) and because SoRelle properly advised Pillans to check Brazos's distributorship contract about the propriety of doing business with the Ashes because the contract prohibits a distributor from selling beer to a retailer who conducts business solely in another distributor's territory.

Branch asserts the following grounds for summary judgment in its motion:

- it did not conspire or contract with the Brazos County defendants to refuse to sell beer to Appellants;

- it did not conspire or agree with anyone to fix or control wholesale beer prices in McLennan County; and

- it did not tortiously or unlawfully interfere with the Ashes' contracts or existing or prospective business relationships with J.J.'s or with their prospective business relationships with Brazos and Hilliard.

Branch also contends that there is no evidence that it:

- conspired or agreed to unreasonably restrain trade, fix or control wholesale beer prices in McLennan County, or boycott the sale of beer to Appellants; or

- tortiously or unlawfully interfered with the Ashes' contracts or existing or prospective business relationships with J.J.'s or with their prospective business relationships with Brazos and Hilliard.

The court granted Branch's and Haas's motions for summary judgment without specifying the basis for its ruling. The court severed Appellants' claims against Branch and Haas from their claims against Hilliard and Brazos so Appellants could prosecute this appeal.

The parties objected to their opponent's summary judgment evidence and complain on appeal about the court's rulings on their objections. Before we address the merits of the summary judgment motions, we must address these evidentiary issues.

---

1. Although Haas does not segregate its "no evidence" claim as distinctly as we would prefer, we will address it separately hereinbelow. *See Fletcher v. Edwards,* 26 S.W.3d 66, 72 (Tex.App.—Waco 2000, pet. denied).

## EVIDENTIARY ISSUES

█ Appellants contend in their third and fourth issues that the court abused its discretion by overruling their objections to the summary judgment affidavits of Haskell Branch and Dudley Haas. Branch and Haas respond that the court properly overruled Appellants' objections. Branch further responds in the alternative that the judgment should be affirmed because Appellants proffered no competent summary judgment evidence in response to the no-evidence portion of Branch's motion.[2]

█ Summary judgment evidence may include deposition transcripts, interrogatory answers, pleadings, affidavits, and "other discovery responses referenced or set forth in the motion or response." TEX.R. CIV. P. 166a(c). The evidence must, however, be presented in a form that would be admissible at trial. *See United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). We review a court's decision to admit or exclude summary judgment evidence under an abuse-of-discretion standard. *See Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex.App.—El Paso 2000, pet. denied); *Ho v. University of Tex.*, 984 S.W.2d 672, 680 (Tex. App.—

Amarillo 1998, pet. denied); *Sanders v. Shelton*, 970 S.W.2d 721, 727 (Tex.App.—Austin 1998, pet. denied).

### APPELLANTS' OBJECTIONS

█ Haas provided the following summary judgment evidence: (1) the affidavit of its owner Dudley Haas; (2) excerpts from the deposition of Haas general manager Mark SoRelle; (3) excerpts from the deposition of Brazos vice-president and general manager Jim Pillans; and (4) excerpts from Appellants' depositions. Branch relied on excerpts from Appellants' depositions and the affidavit of its owner Haskell Branch, Jr. Appellants objected on several grounds to the affidavits. The court overruled all of Appellants' objections except one. We will address each ruling in turn.[3]

### 1. Affidavit of Dudley Haas

Appellants objected to the affidavit of Dudley Haas on the grounds that it fails to state that the facts recited therein were true and correct. The trial court sustained this objection, and Haas has not challenged the propriety of this ruling on appeal. Accordingly, we will not consider

---

**2.** Because Branch does not seek to alter the judgment, we conclude that it may properly assert independent grounds for affirmance of the judgment even though it did not file its own notice of appeal. *See* TEX.R.APP. P. 25.1(c); *Bosque Asset Corp. v. Greenberg*, 19 S.W.3d 514, 520 (Tex.App.—Eastland 2000, pet. denied); *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex.App.—Houston [1st Dist.] 1999, no pet.); *see also First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 503 (Tex. App.—Austin 1998, pet. denied). This seems particularly apt in a summary judgment case in which the movant is the appellee because the Supreme Court has expressly held that an "appellate court may consider other grounds that the movant preserved for review and [the] trial court did not rule on in the interest of judicial economy." *Cincinnati Life Ins. Co.*

*v. Cates*, 927 S.W.2d 623, 626 (Tex.1996); *see also Bosque Asset Corp.*, 19 S.W.3d at 520.

**3.** Our rulings on the evidentiary questions presented do not necessarily establish the law of the case for any subsequent proceedings. Our Supreme Court has held that the law of the case doctrine has limited application following a summary judgment appeal. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630–31 (Tex.1986); *accord National Union Fire Ins. Co. v. John Zink Co.*, 972 S.W.2d 839, 845 (Tex.App.—Corpus Christi 1998, pet. denied); *Pitman v. Lightfoot*, 937 S.W.2d 496, 512–13 (Tex.App.—San Antonio 1996, writ denied). Thus, on remand the parties may assert additional theories or facts which might require a different ruling regarding the admissibility of a particular piece of evidence. *Id.*

this affidavit in reviewing the propriety of the summary judgment rendered in Haas's favor. *See Crow v. Rockett Special Util. Dist.*, 17 S.W.3d 320, 325 (Tex.App.—Waco 2000, pet. denied).

### 2. Affidavit of Haskell Branch, Jr.

■ Appellants objected to the affidavit of Haskell Branch on the grounds that he is an interested witness and the statements contained in his affidavit are conclusory and recite facts which are not readily controvertible. Summary judgment may be based on the affidavit of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R. Civ. P. 166a(c). Summary judgment evidence is readily controvertible if it "could have been effectively countered by opposing evidence." *Trico Tech. Corp. v. Montiel,* 949 S.W.2d 308, 310 (Tex.1997) (citing *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989)).

The statements complained of here consist mainly of testimony regarding Haskell Branch's business practices and his denials that he or any of his employees discussed prices with, entered into agreements with, or attempted to exert influence over J.J.'s, Hilliard, or Brazos. The types of facts that traditionally have been held to be invulnerable to contravention are those that are not objectively verifiable, such as self-serving statements of knowledge and intent. *See Frias v. Atlantic Richfield Co.,* 999 S.W.2d 97, 106 (Tex.App.—Houston [14th Dist.] 1999, pet. denied); *RRR Farms, Ltd. v. American Horse Protection Ass'n,* 957 S.W.2d 121, 132 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). The affidavit in question refers to ascertainable facts regarding an alleged lack of communication between Branch employees and employees of J.J.'s, Hilliard, and Bra-

zos, all of whom Appellants had an opportunity to depose. The court's failure to exclude the affidavit on this basis does not amount to an abuse of discretion.

■ Appellants also contend that the court erred in overruling their objections that this affidavit is speculative and conclusory. Contrary to Appellants' assertions however, we find that the affidavit was based on the personal knowledge of the affiant derived from his ownership of Branch. Moreover, the affiant provides the underlying factual basis for his statements. *See Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.—Houston [1st Dist.] 1997, no writ). Accordingly, the court did not abuse its discretion in overruling Appellants' objections to the affidavit as speculative and conclusory.

### BRANCH'S OBJECTIONS

Appellants proffered the following controverting evidence in response to Appellees' summary judgment motions: (1) excerpts from the deposition testimony of Pillans, SoRelle, Dudley Haas, and Haskell Branch, as well as from the depositions of Hilliard president Jack Hilliard, Jr., Hilliard general manager Jim Schwartz, and Hilliard sales manager Dave Smith; (2) the affidavits of Appellants John Ash, Bill Snider, and George Betros, as well as the affidavit of Larry Salter, a non-party witness; and (3) an audiotape and transcriptions of the conversations Ash had with Pillans and with Smith and the Hilliard receptionist, surreptitiously recorded by Ash during his attempts to purchase beer from the Bryan distributors.

Appellees objected to the majority of the exhibits offered by Appellants on grounds that they contain hearsay, legal conclusions, speculation, opinions, and irrelevant testimony. The court overruled these ob-

jections. Branch contends that the court abused its discretion in so doing.[4]

### 1. Hearsay Objections

▇ In general terms, Branch asserted hearsay objections against the following evidence: (1) Pillans's deposition testimony regarding his conversations with J.J.'s about sales to the Ashes and with SoRelle regarding his conversation with J.J.'s; (2) Smith's deposition testimony regarding his discussions with Ash and Hilliard on the date Ash came to purchase beer from him; (3) an article from the *Waco Tribune–Herald* regarding the Ashes' lawsuit attached as an exhibit to Smith's and Schwartz's depositions; (4) Jack Hilliard's deposition testimony regarding his conversation with Smith; (5) Larry Salter's affidavit in which he recounts a conversation with a Branch employee who told him that Hilliard had contacted Branch regarding Ash's attempt to purchase beer from Hilliard; (6) references in Ash's affidavit to things he "learned" from other witnesses' depositions and from Salter; (7) statements in Ash's affidavit about his conversations with Texas Alcoholic Beverage Commission ("TABC") personnel, with Pillans, and with Smith and the Hilliard receptionist; and (8) the audiotape and transcriptions of his conversations with Pillans and with Smith and the receptionist.[5]

▇ It appears that the statements contained in Pillans's deposition testimony are not hearsay because they were offered as evidence that such statements were made and not to prove the truth of the matters asserted therein. *See* TEX.R. EVID. 801(d); *Closs v. Goose Creek Consolidated Indep. Sch. Dist.*, 874 S.W.2d 859, 869 n. 6 (Tex. App.—Texarkana 1994, no writ); *City of Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 791 (Tex.App.—Dallas 1992, writ denied).

▇ Most of Smith's testimony regarding his conversation with Jack Hilliard appears to have been offered by the Ashes to prove that the conversation took place and not to prove the truth of the matters asserted during the course of the conversation. *Id.* The primary exception is Smith's testimony that Jack Hilliard instructed him to not sell beer to Ash and to tell Ash that the Anheuser–Busch distributorship contract prohibited extra-territorial sales. We presume the Ashes offered this evidence to prove that Jack Hilliard told Smith to not sell them beer and the reason he gave for this. Nevertheless, the Ashes allege in their petition that the McLennan County distributors conspired with the Brazos County distributors to prevent the Ashes from purchasing wholesale beer in Brazos County. Thus, Jack Hilliard's instructions to Smith appear to have been made during the course and in furtherance of the alleged conspiracy. Accordingly, these statements are admissible because: (1) Jack Hilliard is a Hilliard employee and his statements to Smith concerned matters within the scope of his employment; and (2) Hilliard is an alleged co-conspirator of Branch and the statements were made in furtherance of the

---

4. Haas does not challenge the court's overruling of its objections to Appellants' summary judgment evidence.

5. Many of Branch's objections go to "statements" contained within the deposition questions propounded by the Ashes' counsel. However, unsworn statements of counsel generally do not constitute evidence. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997);

*Leaird's, Inc. v. Wrangler, Inc.*, 31 S.W.3d 688, 691 (Tex.App.—Waco 2000, pet. denied). Branch did not object to the form of counsel's questions. Accordingly, we limit our review to the admissibility of the various deponents' testimony (including those instances in which a witness was asked to affirm that a particular statement was made).

conspiracy. *See* Tex.R. Evid. 801(e)(2)(D), (E); *Excel Corp. v. Porras,* 14 S.W.3d 307, 314 n. 1 (Tex.App.—Corpus Christi 1999, pet. denied); *City of Stephenville v. Texas Parks & Wildlife Dep't,* 940 S.W.2d 667, 677–78 (Tex.App.—Austin 1996, writ denied). Because the remainder of Smith's objected-to testimony does not appear to have been offered to prove the truth of the matters asserted therein, we conclude that it is not hearsay. *See* Tex.R. Evid. 801(d); *Closs,* 874 S.W.2d at 869 n. 6; *Houston Lighting & Power Co.,* 844 S.W.2d at 791.

■■■ The *Tribune–Herald* article constitutes hearsay. *See Houston Lighting & Power Co.,* 844 S.W.2d at 791. Accordingly, we will not consider this evidence. *See Crow,* 17 S.W.3d at 325.

■■■ As with Smith's deposition testimony, it appears that Jack Hilliard's deposition testimony that he told Smith to not sell beer to the Ashes is admissible because: (1) Jack Hilliard is a Hilliard employee and his statement to Smith concerned matters within the scope of his employment; and (2) Hilliard is an alleged co-conspirator of Branch and the statement was made in furtherance of the conspiracy. *See* Tex.R. Evid. 801(e)(2)(D), (E); *Excel Corp.,* 14 S.W.3d at 314 n. 1; *City of Stephenville,* 940 S.W.2d at 677–78.

■■■■ Salter states in his affidavit that he had a conversation with Branch employee Pete Anderson who told him that a Hilliard employee had called the Branch office when Ash was there. The unidentified Hilliard employee informed Branch personnel "that Mr. Ash was trying to buy beer from them, and they wanted to know why." Anderson's statement to Salter that the telephone conversation took place does not constitute hearsay because he

was a Branch employee and the statement concerned a matter within the scope of his employment. *See* Tex.R. Evid. 801(e)(2)(D); *Excel Corp.,* 14 S.W.3d 307, 314 n. 1; *City of Stephenville,* 940 S.W.2d at 677–78. The Hilliard employee's comments likewise appear to not be hearsay because: (1) the comments were statements of a Hilliard employee concerning matters within the scope of employment; and (2) Hilliard is an alleged co-conspirator of Branch and the comments were made in furtherance of the conspiracy.[6] *See* Tex.R. Evid. 801(e)(2)(D), (e)(2)(E); *Excel Corp.,* 14 S.W.3d 307, 314 n. 1; *City of Stephenville,* 940 S.W.2d at 677–78. Accordingly, Salter's affidavit does not constitute hearsay.

■■■ The statements in Ash's affidavit regarding matters he "learned" from other witnesses' depositions and the statements in his affidavit regarding his conversations with TABC personnel appear to be hearsay. Accordingly, we will not consider this evidence. *See Crow,* 17 S.W.3d at 325.

■■■ However, the statements in his affidavit regarding his conversations with Pillans and with Smith and the Hilliard receptionist appear to be admissible because: (1) Pillans, Smith, and the receptionist are employees of Hilliard and Brazos and their statements concerned matters in the scope of their employment; and (2) Hilliard and Brazos are alleged co-conspirators of Branch and Haas and the statements were made in furtherance of the conspiracy. *See* Tex.R. Evid. 801(e)(2)(D), (E); *Excel Corp.,* 14 S.W.3d 307, 314 n. 1; *City of Stephenville,* 940 S.W.2d at 677–78. The audiotape and transcriptions of these con-

---

**6.** The fact that Anderson did not identify the Hilliard employee affects only the weight and credibility of his testimony and not its admissibility. *See Yellow Freight Sys., Inc. v. North Am. Cabinet Corp.,* 670 S.W.2d 387, 390 (Tex. App.—Texarkana 1984, no writ).

versations are admissible for the same reasons. *Id.*

### 2. Speculative & Conclusory Evidence

■ Branch additionally argues that the court abused its discretion by overruling its objections that the deposition testimony of Smith, Schwartz, and Haskell and the affidavits of Ash, Betros, and Snider are speculative and conclusory. However, the statements of each witness/affiant appear to be based on the personal knowledge of the declarant and provide the underlying factual basis for the declarant's statements. *See Rizkallah,* 952 S.W.2d at 587. Accordingly, the court did not abuse its discretion by overruling these objections.

#### SUMMARY

The court sustained Appellants' objections to Haas's affidavit. The court did not abuse its discretion in overruling their objections to Branch's affidavit. For these reasons, we conclude that Appellants' third and fourth issues are without merit.

### THE SUMMARY JUDGMENT MOTIONS

Appellants contend in their first and second issues respectively that the court erred in granting Branch's and Haas's summary judgment motions because genuine issues of material fact exist on Appellants' claims.

#### STANDARD OF REVIEW

■ To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Ameri-*

can Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Prop. Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Fletcher v. Edwards,* 26 S.W.3d 66, 73 (Tex.App.—Waco 2000, pet. denied). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965); *Fletcher,* 26 S.W.3d at 73. We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *See American Tobacco,* 951 S.W.2d at 425; *Fletcher,* 26 S.W.3d at 73.

■ We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *See Robinson v. Warner–Lambert Co.,* 998 S.W.2d 407, 410 (Tex.App.—Waco 1999, no pet.); *Moore v. K Mart,* 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* A no-evidence summary judgment will be defeated if the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the elements challenged by the movant. *Id.*

#### THE ASHES' TORTIOUS INTERFERENCE CLAIMS

For some period of time, the intermediate appellate courts have required a plaintiff to establish the following to prevail on a claim of tortious interference with prospective [7] business relations:

(1) a reasonable probability that the parties would have entered into a contractual relationship;

7. Because we will conclude that the record contains no evidence that Branch interfered with the Ashes' contractual relations with J.J.'s, we do not set out the elements of a

claim for tortious interference with a contract. The Supreme Court has most recently listed those elements in *Powell Industries, Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998).

(2) an intentional and malicious act by the defendant that prevented the relationship from occurring with the purpose of harming the plaintiff;

(3) lack of privilege or justification for the act; and

(4) actual harm or damage incurred as a result of the defendant's interference.

*See Milam v. National Ins. Crime Bureau,* 989 S.W.2d 126, 131 (Tex.App.—San Antonio 1999, no pet.); *Garner v. Corpus Christi Nat'l Bank,* 944 S.W.2d 469, 477 (Tex.App.—Corpus Christi 1997, writ denied); *Centel Cellular Co. v. Light,* 899 S.W.2d 343, 345 (Tex.App.—Tyler 1995, writ denied).

The Supreme Court has recently analyzed the second and third elements stated above and modified them to a degree. Regarding the intentionality component of the second element, the Court held:

> interference is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result." But the *Restatement* further provides that "[i]f [the actor] had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found to be not improper."

*Bradford v. Vento,* 48 S.W.3d 749, 757 (Tex.2001) (quoting RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1979)).

Concerning the type of tortious conduct which is actionable, the Court held:

> to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove

that the defendant's conduct would be actionable under a recognized tort.... [A] plaintiff could recover for tortious interference by showing an illegal boycott, although a plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations, and we disapprove of cases that suggest the contrary.

*Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex.2001).

Regarding the third element, the Court held:

> The concepts of justification and privilege are subsumed in the plaintiff's proof, except insofar as they may be defenses to the wrongfulness of the alleged conduct. For example, a statement made against the plaintiff, though defamatory, may be protected by a complete or qualified privilege. Justification and privilege are defenses in a claim for tortious interference with prospective relations only to the extent that they are defenses to the independent tortiousness of the defendant's conduct. Otherwise, the plaintiff need not prove that the defendant's conduct was not justified or privileged, nor can a defendant assert such defenses.

*Id.,* 52 S.W.3d at 726–27 (footnote omitted).

■ Accordingly, it appears that the elements of a claim for tortious interference with a prospective business relationship may be restated as follows:

(1) a reasonable probability that the parties would have entered into a contractual relationship;

(2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;

(3) the defendant did such act with a conscious desire to prevent the relationship from occurring or he knew that the interference was certain or substantially certain to occur as a result of his conduct; and

(4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

See *Bradford*, 48 S.W.3d at 757; *Wal–Mart Stores*, 52 S.W.3d at 713; *Milam*, 989 S.W.2d at 131; *Garner*, 944 S.W.2d at 477; *Centel Cellular*, 899 S.W.2d at 345.

### 1. Branch's No-evidence Motion

Branch asserts in its motion that there is no evidence that it tortiously or unlawfully interfered with the Ashes' contractual relationships with J.J.'s or with their prospective business relationships with Brazos and Hilliard. Branch does not dispute that the Ashes were attempting to establish a business relationship with Hilliard. Accordingly, we focus on the remaining three elements of the Ashes' claim.

We set out in some detail the crux of Appellants' summary judgment evidence at the outset of this opinion and see no need to do so again. In sum, Appellants' evidence shows: (1) Hilliard sales manager Dave Smith was initially concerned only with the quantity of beer Ash wanted to purchase rather than the fact that he was an "out-of-territory" retailer; (2) only after accepting a call from Jack Hilliard did Smith refuse to sell beer to Ash; (3) a Branch employee told Larry Salter that a Hilliard employee had called Branch while Ash was seeking to purchase beer from Hilliard; and (4) Smith told Ash that he could not sell him beer because of the "unwritten rule" between Anheuser–Busch

distributors to honor each other's territory and because "[Jack Hilliard] just didn't want to get into it with [Haskell]."

The Ashes' theory of the case is that Branch unlawfully interfered with their efforts to purchase beer in the Brazos County wholesale market. The evidence suggests that the only reason Branch communicated with Hilliard on the occasion in question was because the Ashes were attempting to purchase beer from Hilliard. Indulging every reasonable inference from the evidence and resolving all doubts in the Ashes' favor, we conclude that this evidence raises a genuine issue of fact on the question of whether Branch tortiously or unlawfully interfered with the Ashes' prospective business relations with Hilliard. The evidence likewise raises a genuine issue of fact on the question of whether Branch consciously desired to interfere with this prospective relationship or knew that the interference was certain or substantially certain to occur as a result of its conduct. However, the record contains no evidence of dealings between Branch and J.J.'s or Brazos.

For these reasons, the court properly granted Branch's no-evidence motion insofar as it challenged the Ashes' assertion that Branch interfered with any contract the Ashes had with J.J.'s or with their prospective business relationship with Brazos. However, the court erred in granting the no-evidence motion insofar as it challenged the Ashes's allegation that Branch tortiously or unlawfully interfered with their prospective business relationship with Hilliard.

### 2. Branch's Traditional Summary Judgment Motion

Branch's motion for summary judgment on the Ashes' tortious interference claim denied any communications between Branch's agents or employees and anyone

at Hilliard. The Ashes' summary judgment evidence, most notably the affidavit of Larry Salter, strongly contradicts Branch's denial.

Indulging every reasonable inference from the evidence and resolving all doubts in the Ashes' favor, we conclude that Branch failed to conclusively establish that any of its agents or employees did not communicate with persons at Hilliard for the purpose of interfering with the Ashes' prospective business relations with Hilliard. Again though, the record contains no evidence that Branch interfered in any manner with their prospective business relations with J.J.'s or Brazos.

For these reasons, the court properly granted Branch's summary judgment motion insofar as it challenged the Ashes' assertion that Branch interfered with any contract the Ashes had with J.J.'s or with their prospective business relationship with Brazos. However, the court erred in granting the motion insofar as it challenged the Ashes's allegation that Branch tortiously or unlawfully interfered with their prospective business relationship with Hilliard.

### 3. Haas's Summary Judgment Motion

■ Haas's motion asserts that it is entitled to judgment as a matter of law on the Ashes' tortious interference claim because Haas manager SoRelle merely advised Brazos manager Pillans to check Brazos's distributorship contract about the propriety of doing business with the Ashes. Haas does not dispute that SoRelle contacted Pillans upon learning that the Ashes were in Bryan attempting to purchase keg beer. Pillans's testimony confirms that he refused to sell beer to the

Ashes and advised J.J.'s to sell no more beer to them solely because of his interpretation of paragraph 2(a) of the distribution agreement regarding the exclusivity of distribution territories.

Appellants produced the only part of the Miller distribution agreement in evidence.[8] That portion reads in relevant part:

IN LIGHT OF THE CURRENT STATUS OF TEXAS LAW, MILLER DISTRIBUTORS IN THE STATE OF TEXAS WILL NOT BE SUBJECT TO PARAGRAPH 2(a) OF THE NEW AGREEMENT RELATING TO EXCLUSIVE TERRITORIES.... THEREFORE, PLEASE DISREGARD PARAGRAPH 2(a) AND THOSE PORTIONS OF THE EXPLANATORY COMMENTS WHICH DISCUSS EXCLUSIVE TERRITORIES.

*See also* TEX. ALCO. BEV.CODE ANN. § 102.53.

Appellants contend that the unambiguous language of Haas's distribution agreement successfully contradicts Pillans's testimony that his interpretation of the agreement was the sole reason for his refusal to sell beer to the Ashes.

As with Branch, the Ashes contend that Haas was engaged in an effort to unlawfully interfere with their purchase of beer in the Brazos County wholesale market. Indulging every reasonable inference from the evidence and resolving all doubts in the Ashes' favor, we conclude that Haas failed to conclusively establish that it did not tortiously or unlawfully interfere with the Ashes' existing and prospective business relationships with the Brazos County distributors. The evidence likewise raises

---

**8.** Haas quoted paragraph 2(a) in his summary judgment affidavit, which we have already determined we will not consider. According to the pleading Appellants filed with this ex-

cerpt from the Miller contract, the parties have agreed to keep the distributors' contracts with the breweries confidential.

a genuine issue of fact on the question of whether Haas consciously desired to interfere with these relationships or knew that the interference was certain or substantially certain to occur as a result of its conduct.

For these reasons, the court erred in granting Haas's summary judgment motion insofar as it challenged the Ashes' allegation that Haas tortiously or unlawfully interfered with their existing and prospective business relationships with the Brazos County distributors.

### APPELLANTS' ANTITRUST CLAIMS

■ Appellants allege that Branch's and Haas's owners have used their membership in the McLennan County Wholesale Beer Distributors Association to conspire to fix and maintain the wholesale price of beer in violation of the Texas Free Enterprise and Antitrust Act of 1983 (the "Antitrust Act"). *See* TEX. BUS. & COM.CODE ANN. §§ 15.01–15.52 (Vernon 1987 & Supp. 2001).

■ The Antitrust Act prohibits as unlawful "[e]very contract, combination, or conspiracy in restraint of trade or commerce." TEX. BUS. & COM.CODE ANN. § 15.05(a) (Vernon Supp.2001). We must interpret the Texas Antitrust Act in accordance with federal jurisprudence construing similar federal antitrust statutes. *See id.* § 15.04 (Vernon 1987); *Abbott Lab., Inc. v. Segura,* 907 S.W.2d 503, 505 (Tex. 1995); *Caller–Times Pub. Co. v. Triad Communications, Inc.,* 826 S.W.2d 576, 580 (Tex.1992).

■ Branch and Haas deny in their summary judgment motions that any of their agents or employees ever discussed or reached agreements upon prices with anyone. They proffered evidence which tends to support their denials. Appellants' summary judgment evidence is under-

standably more circumstantial. Because a price-fixing conspiracy is rarely evinced by express agreement, courts must necessarily be cognizant of the difficulty in presenting direct evidence of an unlawful agreement between conspirators. As a result, courts have traditionally been willing to recognize a broad range of permissible inferences that may be drawn from circumstantial evidence of possibly illegal business behavior. *See, e.g., Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

■ However, care must be taken to ensure that inferences of unlawful activity drawn from ambiguous evidence do not deter procompetitive behavior. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1364 (3d Cir.1992). That concern was highlighted when the United States Supreme Court considered a summary judgment granted for the defendants in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In *Matsushita,* the Court recognized that substantive law limits the range of permissible inferences which may be drawn from ambiguous evidence in a case brought under the Sherman Antitrust Act. *See id.* at 588, 106 S.Ct. at 1356. *Matsushita* involved allegations that the defendants had engaged in predatory pricing by setting their prices below the market level to drive their competitors out of the American market for consumer electronic products. *Id.* at 581, 106 S.Ct. at 1353.

The Court focused on the fact that predatory pricing agreements are at least initially harmful to those that enter into them due to the necessity of forgoing immediate profits in favor of a speculative future gain. *Id.* at 588, 106 S.Ct. at 1357. Because the allegations in *Matsushita* involved price-cutting, permitting Appellants

to draw an excessively broad range of inferences from the defendants' ambiguous conduct would have potentially chilled procompetitive behavior. The Court reasoned that "if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id.* at 587, 106 S.Ct. at 1356. Because the *Matsushita* respondents' theory was not economically feasible, the Court concluded that the ambiguous summary judgment evidence they proffered was insufficient to withstand summary judgment. *Id.* at 596–97, 106 S.Ct. at 1361.

*Matsushita* establishes that policy considerations underlying substantive antitrust law may limit the reasonableness of the inferences which may be drawn from circumstantial evidence put forth in opposition to a motion for summary judgment. *See Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1233 (3rd Cir.1993). By requiring non-movants to "come forward with more persuasive evidence to support their claim than would otherwise be necessary," the Court suggested that a trial court must engage, at least partially, in a qualitative review of the plausibility of an antitrust plaintiff's claim and the persuasiveness of the evidence advanced in its support. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

Nevertheless, *Matsushita*'s application to the case at bar is limited in two respects. First, Appellants allege conduct which is economically feasible. Appellants allege that the defendants have conspired to maintain the price of keg beer at unnaturally high levels, and have used their territorial distributorship agreements with the breweries to prevent retailers from avoiding the over-market prices. Thus, the evidence which supports this theory does not require the type of broad inferences that might, if entertained, deter any significant procompetitive conduct.

Second, *Matsushita* concerns the federal summary judgment practice, which varies significantly from the Texas summary judgment practice. As the Supreme Court of Texas stated in *Casso:*

Texas law, of course, is different. While the language of our rule is similar, our interpretation of that language is not. We use summary judgments merely "to eliminate patently unmeritorious claims and untenable defenses," and we never shift the burden of proof to the non-movant unless and until the movant has "establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law."

*Casso,* 776 S.W.2d at 556 (quoting *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 & n. 5 (Tex.1979)); *accord City of Lancaster v. Chambers,* 883 S.W.2d 650, 657 (Tex.1994); *Bexar County v. Giroux–Daniel,* 956 S.W.2d 692, 698 (Tex. App.—San Antonio 1997, no pet.).

When we review a traditional summary judgment motion under Texas law, we indulge every *reasonable* inference in favor of the non-movant. *See American Tobacco,* 951 S.W.2d at 425; *Fletcher,* 26 S.W.3d at 73. In this vein, we view *Matsushita* as instructive to the extent that it provides standards for determining the *reasonableness* of the inferences to which Appellants are entitled.

 Settled law establishes that parallel business behavior (*i.e.,* "conscious parallelism") standing alone does not suffice to raise a genuine fact issue regarding a price-fixing claim. *See Theatre Enters.,*

*Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 537, 541, 74 S.Ct. 257, 259–60, 98 L.Ed. 273 (1954). Courts thus look to certain "plus factors" that tend to exclude the possibility that the defendants acted independently. *See Petruzzi's IGA Supermarkets,* 998 F.2d at 1232. Such factors traditionally include price parallelism, product uniformity, exchange of price information, and the opportunity for the alleged conspirators to meet to formulate illegal policies. *See C–O–Two Fire Equip. Co. v. United States,* 197 F.2d 489, 493 (9th Cir.1952).

The undisputed evidence in the summary judgment record indicates that Appellees engaged in the advance publication of future price information. During the relevant time period, Branch announced and published a proposed price increase before the other McLennan County distributors, who invariably announced identical price increases which took effect on the same date. Appellees admit to membership in the McLennan County Wholesale Beer Distributors Association, whose monthly meetings during the relevant time period were attended only by the owners. The summary judgment evidence indicates that there has never been more than one price increase between any two meetings of the Association. Finally, the evidence reveals that keg beer prices in areas in which a formal association of beer distributors exists, such as McLennan County, are approximately twenty dollars per keg higher than prices in those areas, such as Brazos County, that do not have such associations.

This evidence raises genuine issues of material fact on the so-called "plus factors" listed above. Indulging every reasonable inference from this evidence and resolving all doubts in Appellants' favor, we conclude that the evidence raises a genuine issue of fact on the question of whether Appellees engaged in unlawful price-fixing. We likewise conclude that Appellees were not entitled to judgment on the no-evidence portion of their motions because the evidence which we have referenced above is sufficient to raise a genuine issue of material fact on each of the elements challenged in the no-evidence portion of the motions.

Accordingly, Appellants' first and second issues are meritorious.

## CONCLUSION

We affirm that portion of the judgment finding that Branch did not interfere with any contract the Ashes had with J.J.'s or with their prospective business relationship with Brazos. We reverse the portion of the summary judgment granted on the remainder of Appellants' claims, sever, and remand that portion of this cause to the trial court for further proceedings consistent with this opinion. See *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 823 (Tex.1985); *Fletcher,* 26 S.W.3d at 80.