IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00321-CV

 

Charlsie Northcutt Morrison,

                                                                      Appellant

 v.

 

James Robinson 

and Charles Owen Robinson,

                                                                      Appellees

 

 

 



From the 82nd District Court

Robertson County, Texas

Trial Court No. 04-12-17,123-CV

 



Opinion



 

Appellant Charlsie
Northcutt Morrison appeals the trial court’s summary judgment in favor of
Appellees James Robinson and Charles Owen Robinson.

Background

      Morrison and her sister-in-law,
Barbara Evans, each owned an undivided one-half interest in 87.36 acres in Robertson County.  They conveyed their interests in the surface estate to the Robinsons on
July 9, 1998.  The deed conveying the surface estate also contained separate
mineral reservations for each of the grantors.

The deed was prepared by Morrison’s
attorney.  Prior to executing the deed, counsel for the Robinsons reviewed a
draft and contacted the attorney about concerns with the language in the
mineral reservations.  However, he was assured that the language was consistent
with the intent of the parties as expressed in the contract, and the parties
executed the deed with this language.  Thereafter, T-Bar-X Company leased the
minerals under the 87.36 acres and a dispute arose between Morrison and the
Robinsons as to what portion of the minerals each party owned.

On December 21, 2004, the
Robinsons filed their original petition for declaratory judgment against Morrison,
who answered and filed a counterclaim for declaratory judgment and to quiet
title.[1] 
The trial court granted summary judgment in favor of the Robinsons and, on
August 15, 2005, denied Morrison’s Motion for New Trial.

Morrison brings four issues
on appeal.  We will reverse on the first issue and need not address the other
three.

Standard of Review

We review the decision to
grant or deny a summary-judgment motion de novo.  See Provident Life
& Accident Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  The
standards for reviewing a traditional motion for summary judgment are well
established.  Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  The movant has the burden of showing that no genuine issue of material fact
exists and that he is entitled to summary judgment as a matter of law.  American
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Ash v. Hack
Branch Distributing Co., 54 S.W.3d 401, 413 (Tex. App.—Waco 2001, pet.
denied).  The reviewing court must accept all evidence favorable to the
non-movant as true.  Nixon, 690 S.W.2d at 549; Ash, 54 S.W.3d at
413.  Every reasonable inference must be indulged in favor of the non-movant
and all doubts resolved in its favor.  American Tobacco, 951 S.W.2d at
425; Ash, 54 S.W.3d at 413.

Deed Ambiguity

In her first issue,
Morrison questions whether the deed is ambiguous.  The question of ambiguity in
a deed is a question of law.  Cherokee Water Co. v. Freeman, 33 S.W.3d
349, 353 (Tex. App.—Texarkana 2000, no pet.) (citing Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987)).  An instrument is not
ambiguous if it can be given a definite or certain meaning as a matter of law. 
Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983).  However, if a deed is
subject to two or more reasonable interpretations, it is ambiguous.  See Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  An ambiguity creates a fact issue as to the parties’ intent.  Id.

An ambiguity does not arise
simply because the parties advance conflicting interpretations.  Lopez v.
Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000) (citing Columbia
Gas, 940 S.W.2d at 589).  For an ambiguity to exist, both interpretations
must be reasonable.  Id. 
Therefore, we must decide if there is more than one reasonable interpretation
of Morrison’s mineral reservation in the deed.

At issue is the following
language:

SAVE AND EXCEPT and there is hereby
reserved for Grantor, Charlsie Northcutt Morrison, and her heirs,
administrators, successors or assigns, an undivided one-half (½) interest of
the oil, gas and other minerals produced with the oil and gas now owned
by Charlsie Northcutt Morrison that are in and under the property and that may
be produced from it[.]

 

Under the Robinsons’
interpretation, the express wording of the reservation operated to reserve unto
Morrison an undivided one-quarter interest in the mineral estate.  The reservation,
as quoted above, states that Morrison reserved an undivided one-half of the
minerals produced with the oil and gas now owned by her.  The words “now owned”
are underlined in the deed.  We find that it is reasonable to read the
reservation with an emphasis on the words “now owned” and conclude that
Morrison intended to convey one-half of her mineral interest (i.e.
one-quarter of the total mineral interest).

      Morrison argues, however, that
her reservation must be harmonized with the Evans Reservation which contains
the following language:

SAVE AND EXCEPT and there is hereby
reserved for Grantor, Barbara Morrison Evans and her heirs, administrators,
successors or assigns, for a period until June 11, 2000, an undivided one-half
(½) interest of the oil and gas and other minerals produced with the oil and
gas now owned by Barbara Morrison Evans, that are in and under the
property and that may be produced from it[.]

…

On June 11, 2000, an undivided one-fourth
(¼) interest of the total mineral estate shall pass to and be owned by
Grantees, their heirs and assigns.  It is the intent of the Grantor Barbara
Morrison Evans and the Grantee [sic] James E. Robinson and Charles Owen
Robinson, that as of June 11, 2000 that Barbara Morrison Evans, her heirs and
assigns shall own an undivided one-fourth (¼) of the oil, gas and other
minerals and James E. Robinson and Charles Owen Robinson and their heirs and
assigns shall own an undivided one-fourth (¼) of the total oil, gas and mineral
estate.

 

Morrison claims that the
meaning of the “now owned by” language in her reservation is revealed in the
additional language.  She argues that the last sentence of the Evans Reservation
indicates that both reservations intended for the grantors to initially retain their
undivided one-half interests in the minerals.  She argues that because the
language in the Evans Reservation makes clear that the parties intended for
Evans to retain her undivided one-half interest in the mineral estate until
June 11, 2000, the only reasonable construction for the language in the
Morrison Reservation is that she would likewise retain her undivided one-half
interest in the mineral estate.

      Whether an instrument is
ambiguous is a question of law that must be decided by examining it as a whole
in light of the circumstances present when it was executed.  See Enter.
Leasing Co. of Houston v. Barrios, 156 S.W.3d 547, 549 (Tex. 2004).  We
must examine and consider the entire writing in an effort to harmonize and give
effect to all provisions so that none will be rendered meaningless.  See
Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994).  No single
provision will control; rather, all provisions must be considered with
reference to the whole instrument.  Id.

Finding that the wording of
the Morrison Reservation is substantially identical to the Evans Reservation,
and considering the additional language, we find that both interpretations are
reasonable.  Because the deed is reasonably susceptible to more than one
meaning, it is ambiguous.  This ambiguity creates a fact issue as to the
parties’ intent and, therefore, summary judgment was not proper.

Conclusion

      Having
sustained Morrison’s first issue, we reverse the summary judgment and remand
the cause to the trial court for further proceedings.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

            (Chief
Justice Gray dissenting)

Reversed
and remanded

Opinion
delivered and filed August 30, 2006

[CV06]









    [1]   Barbara
Evans is not a party.








 He said that he went to the hospital where Damon was being
treated for his thumb injury and talked to him outside his wife’s presence. He indicated that
Damon told him he had seen a blonde in a red convertible and did not think she should be out and
about. He related that Damon said he wanted to talk to her. He said that Damon indicated that
when the prostitute came up and asked him for the money, he told her he wanted to talk to her. 
Dressler stated that Damon told him that at that point he did not know what happened, but said
he believed that his thumb could have been cut by a knife. Detective Dresser acknowledged that
he had not preserved Damon’s statements at the time in a notebook or report, but put them on the
computer later in the day.
      Damon argues that the evidence is insufficient to support his conviction, urging that neither
the absence of a knife at the scene or the State’s plea for the jury to find DePriest more credible
disproved self-defense. As Damon acknowledges, the State does not have the burden to
affirmatively produce evidence to refute his theory of self-defense. Saxton, 804 S.W.2d at 913. 
Defensive evidence that is merely consistent with the physical evidence at the scene of the alleged
offense will not render the State’s evidence insufficient because the credibility of such evidence
is solely within the jury’s province, and the jury is free to accept or reject the defensive evidence. 
Id. at 914. A jury’s verdict of guilty is an implicit finding rejecting the defendant’s self-defense
theory. Id. We hold that the evidence is legally sufficient to support Damon’s conviction. We
overrule issue one.
      Damon urges in issue two that the trial court erred in sustaining the State’s objection to
defense argument concerning the limits of the court’s punishment options. Counsel for Damon
argued to the jury at the punishment phase of the trial that ”there is just no provision in Texas law
in cases of aggravated assault for a defendant to come in and throw himself on the mercy of the
court because in cases of deadly weapons our wise legislature has said only juries may consider
these cases if a defendant applies for probation.” The State objected on the basis that the Court
could give him deferred adjudication. After a brief exchange between counsel, the trial court
stated, “I’ll allow the State to answer the argument.” Damon’s counsel resumed argument,
stating, “Jason Damon could not come into this court and plead guilty with hopes of being found
guilty and given probation by the Judge.” At that point State’s counsel objected, stating, “Again,
that’s a misstatement of the law. It’s an entirely — it’s entirely within your discretion.” The trial
court then sustained the objection. At that point, Damon’s counsel replied, “Judge, you can’t find
him guilty and give him probation and that’s clear in the law.” The trial court then stated, “I’ll
overrule the objection. The State can answer the argument.” Damon’s counsel resumed argument
again, saying, “Counsel is trying to break up my continuity because they know what I’m saying
is true and the Court overruled his objection.” Inasmuch as the trial court ultimately overruled
the State’s objection, the trial court did not reversibly err in initially sustaining the objection. 
Even if we were to assume that it was error for the trial court to initially sustain the State’s
objection, this did not affect Damon’s substantial rights inasmuch as the trial court immediately
thereafter overruled the objection. To the extent Damon is complaining of error in the form of
the State’s objection, nothing is preserved for review because Damon made no objection to the
form of the objection at trial. Tex. R. App. P. 33.1(a)(1). We overrule issue two.
      The judgment is affirmed. 

                                                                         JOHN G. HILL
                                                                         Senior Justice

Before Chief Justice Davis,
      Justice Vance, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed on March 19, 2003
Do not publish
[CR25]