IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00195-CV

 

Vernon G. Johnson,

                                                                      Appellant

 v.

 

Baylor University,

                                                                      Appellee

 

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 1999-169-4

 



O p i n i o n



 

Introduction and Background

          Vernon Johnson sued Baylor University, asserting four causes of action.  Baylor obtained summary judgment; Johnson
appeals.  We will affirm in part and reverse and remand in part.

          Johnson, a pilot working for Baylor
from 1992 to 1994, was fired for chronic obesity and poor grammar and diction,
which Baylor believed diminished its image to people who flew on Baylor’s
aircraft.  Baylor’s president at the time, Dr. Herbert H. Reynolds, however, repeatedly
praised Johnson’s skills as a pilot.  In August 1997 (while his discrimination
suit[1]
against Baylor was pending), Johnson obtained employment on a probationary
basis with Kitty Hawk Air Cargo, Inc., an air freight carrier, and began
training.  In his pre-employment interview with Kitty Hawk, Johnson informed Kitty Hawk that he had been terminated by Baylor because of his obesity and not because of
his performance as a pilot.

Kitty Hawk
received a pre-employment
background report—prepared by Accu-Screen, Inc. from information obtained from
Baylor—that Johnson had been
involuntarily terminated for misconduct and that he was ineligible for rehire. 
 Kitty Hawk sought Johnson’s employment records from Baylor,[2]
but Baylor erroneously responded that Johnson’s personnel records were not
available.  About a month later—and after receiving the report from Accu-Screen
and having no records from Baylor—Kitty Hawk dismissed Johnson.[3]

          About sixteen months later, after
Johnson had obtained copies of the documents that Accu-Screen and Baylor had
sent Kitty Hawk, Johnson sued Baylor again, this time alleging tortious
interference with a contract and with a prospective contractual relationship,
and contending that Baylor’s statements to Kitty Hawk were false and had caused
his employment with Kitty Hawk to be terminated.[4] 
Johnson later added defamation and negligent misrepresentation claims.  Ultimately,
the trial court granted summary judgment for Baylor on all of Johnson’s claims.

          Johnson raises three issues, asserting
that the trial court erred in granting summary judgment on his tortious
interference, defamation, and negligent misrepresentation claims, respectively.

Standard of Review

We review the decision to grant a summary
judgment de novo.  Provident
Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  The standards for reviewing a traditional motion for summary
judgment are well established.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985).  The movant has the burden of showing that no
genuine issue of material fact exists and that it is entitled to the summary
judgment as a matter of law.  American Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997); Ash v. Hack Branch Distributing Co., 54
S.W.3d 401, 413 (Tex. App.—Waco 2001, pet. denied).  The reviewing court
must accept all evidence favorable to the nonmovant as true.  Nixon,
690 S.W.2d at 549; Ash, 54 S.W.3d at 413.  Every reasonable
inference must be indulged in favor of the nonmovant and all doubts resolved in
his favor.  American Tobacco, 951 S.W.2d at 425; Ash, 54 S.W.3d
at 413.  Consistent with the
standard of review, we present the background facts in the light most favorable
to the nonmovant.  See Turner v. KTRK TV, Inc., 38 S.W.3d 103, 109
(Tex. 2000); see also Forbes, Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 172 (Tex. 2003) (appellate court views record in light most
favorable to nonmovant when reviewing no-evidence summary judgment motion).

If the movant for summary judgment is
a defendant, then the movant must negate at least one of the elements of the
nonmovant's cause of action, or alternatively, the movant must conclusively
establish each element of an affirmative defense.  Clifton v. Hopkins,
107 S.W.3d 755, 757 (Tex. App.—Waco 2003, pet. denied).  The nonmovant
need not respond to the motion for summary judgment unless the movant meets its
burden of proof.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217,
222-23 (Tex. 1999).  But if the movant meets its burden of proof, the nonmovant
must present summary judgment evidence to raise a fact issue.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 

We apply the same standard in reviewing
the grant of a no-evidence summary judgment motion as we would in reviewing a
directed verdict.  Ash, 54 S.W.3d at 413.  We review the
summary judgment evidence in the light most favorable to the nonmovant,
disregarding all contrary evidence and inferences.  Id.  A
no-evidence motion will be defeated if more than a scintilla of probative
evidence exists to raise a genuine issue of material fact on the element
challenged by the movant.  Id.  More than a scintilla of
evidence exists if it would allow reasonable and fair-minded people to differ
in their conclusions.  Forbes, Inc., 124 S.W.3d at 172.

When a trial court's order granting
summary judgment does not specify the ground or grounds relied on for the
ruling, summary judgment will be affirmed on appeal if any of the theories
advanced are meritorious.  State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993); Larsen
v. Carlene Langford & Assocs., Inc., 41 S.W.3d 245, 249 (Tex. App.—Waco 2001, pet. denied).

Analysis

Defamation

          We first address Johnson’s second
issue, which asserts that the trial court erred in granting summary judgment on
his defamation claim.  Baylor filed traditional and no-evidence motions for
summary judgment on this claim.  Its traditional motion asserted that Johnson’s
defamation claim was barred by the one-year statute of limitations.  The trial
court granted both motions without stating any grounds.

          The summary judgment evidence shows Johnson
began working work for Kitty Hawk in August of 1997, starting his initial
training on a probationary basis.  After completing the first phase of
training, Johnson took leave before he was to resume training at the end of
September 1997.  But Kitty Hawk sent Johnson a letter dated September 25, 1997,
stating that he was being removed from Kitty Hawk’s training schedule and that
he was relieved from any further Kitty Hawk training or attendance. 

          In an August 14, 1997 letter to
Baylor, Kitty Hawk had requested that Baylor provide it with Johnson’s
personnel records for the previous five years, as required by the PRSA.  The
basis of Johnson’s defamation claim was Baylor’s written statement to Kitty
Hawk (through an August 25, 1997 pre-employment background report prepared by
Accu-Screen, Inc. from information obtained from Baylor) that Johnson’s
employment with Baylor as a pilot had been terminated “involuntarily” for
“conduct” reasons and that he was ineligible for rehire.  Johnson claims that
these statements were false.

Johnson stated in his affidavit that, when he
inquired about the reason for Kitty Hawk’s decision, he was told that the
decision was based on information from Baylor.  In March of 1998, Johnson
obtained a copy of the documents that Kitty Hawk had received.  He filed this
suit on January 19, 1999, about sixteen months after being terminated by Kitty Hawk.

The statute of limitations for a defamation
cause of action is one year.  Tex. Civ.
Prac. & Rem. Code. Ann. § 16.002(a) (Vernon 2002).  Ordinarily, the
cause of action accrues on the date the defamatory matter is published.  See
Langston v. Eagle Publishing Co., 719 S.W.2d 612, 615 (Tex. App.—Waco 1986,
writ ref’d n.r.e.).  The discovery rule applies to libel actions, and under
this rule, the statute of limitation does not begin to run until the injured
party learns of, or, in the exercise of reasonable diligence, should have
learned of the injury or wrong giving rise to the action.  Id. (citing Kelley
v. Rinkle, 532 S.W.2d 947, 949 (Tex. 1976)); see also KPMG Peat Marwick
v. Harrison County Fin. Corp., 988 S.W.2d 746, 749 (Tex. 1999) (“accrual
occurs when the plaintiff knew or should have known of the wrongfully caused
injury”).  The plaintiff need not know the specific nature of each wrongful act
that may have caused the injury.  KPMG, 988 S.W.2d at 749.

Because Johnson pled the discovery rule, Baylor
had the burden of negating the discovery rule by proving as a matter of law that
no fact issue existed on when Johnson discovered or should have discovered the
nature of the injury.  Rhone-Poulenc, Inc., 997 S.W.2d at 223; Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990).  Baylor argues that, because Johnson’s injury (the loss of his job with Kitty
Hawk) occurred in September 1997 and he was told then that his termination
occurred because he had a “problem” with Baylor (i.e., the information
that Kitty Hawk had received from Baylor), Johnson’s defamation claim accrued
then and the statute of limitations began to run.

We agree with Baylor that Johnson
knew or should have known of his wrongfully caused injury when he was dismissed
by Kitty Hawk and told that it was because of the information Kitty Hawk had
received from Baylor.  Johnson knew or should have known then the facts that he
later alleged—that his injury was the result of the wrongful conduct of others,
i.e., Baylor’s providing information to Kitty Hawk.  Because Johnson’s
defamation claim accrued more than one year before he filed suit, summary
judgment on Baylor’s limitations defense was proper.  We overrule Johnson’s
second issue.

Negligent Misrepresentation:  First Element
(Defendant Provides Information)

 

Johnson’s third issue asserts that the trial
court erred in granting summary judgment on his negligent misrepresentation
claim.  Baylor filed traditional and no-evidence motions for summary judgment
on this claim.  Its traditional motion asserted that Johnson had released
Baylor, while its no-evidence motion was based on the first, fourth, and fifth elements
of negligent misrepresentation.  The trial court granted both motions without
stating any grounds.

          Johnson pled that Baylor made false representations
to Kitty Hawk about his discharge from Baylor.  He also pled that Baylor
falsely represented to Kitty Hawk that Johnson’s personnel records were not
available.

The elements of negligent misrepresentation are:

 

1.       a defendant provides information in the
course of his business, or in a transaction in which he has a pecuniary
interest;

 

          2.       the
information supplied is false;

 

3        the defendant did not exercise
reasonable care or competence in obtaining or communicating the information;

 

          4.       the
plaintiff justifiably relies on the information;  and

          

          5.       the
plaintiff suffers damages proximately caused by the reliance.

 

Federal Land Bank Ass’n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991); Larsen,
41 S.W.3d at 249-50; see also McCamish, Martin, Brown, & Loeffler v.
F.E. Appling Interests, Inc., 991 S.W.2d 787, 791 (Tex. 1999) (citing Sloane
and quoting section 552 of the Restatement (Second) of Torts).

          Baylor moved for summary judgment on
the ground that Baylor made representations to Kitty Hawk, not to Johnson, and
that Johnson’s negligent misrepresentation claim thus fails on the first
element.  Citing the above three cases, Baylor asserts that the first element
of a negligent misrepresentation claim is that the defendant made a
representation to the plaintiff in the course of the defendant’s
business or in a transaction in which the defendant had an interest.  None of
these cases, however, requires that the misrepresentation be made to the
plaintiff.[5]  See,
e.g., Cook Consultants, Inc. v. Larson, 700 S.W.2d 231, 233-36 (Tex.
App.—Dallas 1985, writ ref’d n.r.e.) (surveyor that was hired by builder was
liable to homeowner for surveyor’s negligent misrepresentation).

In Cook Consultants, the court cited the
following factors as considerations in determining whether the duty described
in section 552 is owed in a particular case:  (1) the extent to which the
transaction was intended to affect the plaintiff; (2) forseeability of harm to the
plaintiff; (3) the closeness of the connection between the defendant’s conduct
and the injury suffered; and (4) the potential liability.  Id. at
234-35.  Kitty Hawk’s request to Baylor for Johnson’s records included
Johnson’s authorization to provide the records to Kitty Hawk.  Applying these
four factors, we find that Baylor owed Johnson a duty to exercise reasonable
care in supplying his personnel records to Kitty Hawk, and more than a
scintilla of evidence exists that Baylor made a representation to Kitty Hawk
for Johnson’s benefit; upon receiving Kitty Hawk’s request for Johnson’s
personnel records, Baylor knew or should have known that Johnson was relying on
Baylor to properly supply his records to Kitty Hawk.  Summary judgment on this
ground and element was error, and we sustain Johnson’s third issue in this
respect.

          Negligent
Misrepresentation:  Fourth Element (Justifiable reliance)

 

          Baylor moved for summary judgment on
the ground that there was no evidence that Johnson justifiably relied on the
information supplied by Baylor to Kitty Hawk.

At his pre-employment
interview with Kitty Hawk, Johnson informed Kitty Hawk that he had been
terminated by Baylor because of his obesity, not because of his performance as
a pilot.  It is a reasonable inference that Johnson knew his personnel records,
which included his annual evaluations and Dr. Reynolds’s letters to Johnson
about his problem with Johnson’s obesity, grammar, and diction, would verify to
 Kitty Hawk that he had been terminated by Baylor because of his obesity, not
because of his performance as a pilot.  Further, Johnson knew and Baylor knew or
should have known that the information Baylor would be providing to Kitty Hawk
would influence Kitty Hawk’s employment relationship with Johnson; Baylor (which had at least constructive
knowledge of the PRSA’s provisions on obtaining a pilot’s personnel records)
knew or should have known that Johnson was relying on Baylor to supply his records
to Kitty Hawk because Kitty Hawk’s request to Baylor for Johnson’s records
included Johnson’s authorization to provide the records to Kitty Hawk.  There is thus more than a scintilla of evidence that
Johnson justifiably relied on Baylor’s representations to Kitty Hawk about
Johnson’s personnel records.  Summary
judgment on this ground and element was error, and we sustain Johnson’s third
issue in this respect.

Negligent Misrepresentation and Tortious
Interference:  Causation

          Baylor moved for summary judgment on
the ground that there was no evidence that its alleged negligent misrepresentation
caused Johnson’s injury.  The trial court had earlier granted Baylor’s
no-evidence motion for summary judgment on causation on Johnson’s claims for
tortious interference with contract and tortious interference with prospective contract,
which is the basis of Johnson’s first issue.[6]  Thus,
we will address causation as to these three claims together, addressing the
remainder of issue three and issue one as to causation.

The elements of a claim for tortious
interference with contract are:  

 

(1)      a contract subject to
interference exists; 

 

(2)      the alleged act of
interference was willful and intentional; 

 

(3)      the willful and
intentional act proximately caused damage; and 

 

(4)      actual damage or loss
occurred.

 

ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).  

 

The elements of a claim for tortious
interference with prospective contract are:

(1)      a reasonable probability
that the parties would have entered into a contractual relationship; 

 

(2)      an “independently tortious
or unlawful” act by the defendant that prevented the relationship from
occurring; 

 

(3)      the defendant did such act
with a conscious desire to prevent the relationship from occurring, or it knew
that the interference was certain or substantially certain to occur as a result
of the defendant’s conduct; and

 

(4)      the plaintiff suffered
actual harm or damage as a result of the defendant’s interference.

 

Ash,
54 S.W.3d at 414-15.  “Independently tortious” means conduct that would violate
some other recognized tort duty.  Wal-Mart Stores, Inc. v. Sturges, 52
S.W.3d 711, 713 (Tex. 2001).

          The Dallas Court of Appeals recently
addressed the causation element for a tortious
interference with prospective contract claim:

The second element of this tort requires that
the independently tortious or wrongful act “prevented the relationship from
occurring.”  The Texas Supreme Court has addressed the causation aspect of this
element.  See Prudential Ins. Co. of Am. v. Fin. Review Servs.  Inc., 29
S.W.3d 74, 83 (Tex. 2000) (causation inquiry is whether defendant’s alleged
business disparagement caused injury to plaintiff’s prospective contracts); Hurlbut
v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 767 (Tex. 1987) (business
disparagement case; statement must play a “substantial part” in inducing others
not to deal with the plaintiff, resulting in special damage, i.e., lost trade
or other dealings).

 

          We construe this element to require,
at minimum, that the tortious conduct constitute a cause in fact that prevented
the prospective business relationship from coming to fruition in the form of a
contractual agreement.  The test for cause in fact, or “but for causation,” is
whether the act or omission was a substantial factor in causing the injury “without
which the harm would not have occurred.”  Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995).

 

COC Servs., Ltd. v. CompUSA, Inc., 150 S.W.3d 654, 679 (Tex. App.—Dallas 2004,
pet. filed).  We agree with this test and will apply it to Johnson’s claim for tortious interference with prospective contract.

          In his affidavit, Johnson stated: 
“When I inquired about the reason for Kitty Hawk’s decision, I was told that
the decision was based on information furnished (and not furnished) by
Baylor.”  It is not disputed that:

·       
In a letter dated August 14,
1997, in accordance with the PRSA, Kitty Hawk requested Johnson’s personnel
records from Baylor for the preceding five years because it was considering Johnson
for employment as a pilot.

 

·       
Kitty Hawk’s letter included
a “Pilot Record Request Form” stating that it was a “request pursuant to U.S.C.
Title 49 §44936 also known as Title V – Pilot Record Sharing of the Federal
Aviation Reauthorization Act of 1996,” and that it was requesting that Baylor
provide the records within thirty days.

 

·       
Baylor received Kitty Hawk’s August 14 letter on August 18. 

 

·       
Despite the PRSA’s
requirement (49 U.S.C. § 44703(h)(6)(A)) that Baylor notify Johnson that his
records had been requested and that he had a right to receive a copy of his records,
it did not notify Johnson.

 

·       
Baylor received records from
Accu-Screen showing that Kitty Hawk was requesting information on Johnson’s
employment from 1991 to 1994. 

 

·       
Baylor, in a September 11,
1997 letter to Kitty Hawk, responded that it did “not have personnel files
readily available for individuals who worked for us this far back.”  But
deposition testimony of Baylor personnel shows that Johnson’s personnel records
were accessible; they had been retained in the personnel office and then were
transferred to the General Counsel’s office.  They had also been made a part of
the record in Johnson’s federal discrimination suit against Baylor.

 

·       
Kitty Hawk then wrote Johnson on September 25, 1997 that
he was being relieved from any further training or attendance.

 




The PRSA (the PRIA) provides in pertinent part: 


(1)  In general.  Subject to
paragraph (14), before allowing an individual to begin
service as a pilot, an air carrier shall request and receive the
following information:

(A)
FAA records. . . . 

 

(B)
Air carrier and other records.--From any air carrier or other person . . . that has employed the
individual as a pilot of a civil or public aircraft at any time during the 5-year
period preceding the date of the employment application of the individual, . .
. 

 

(ii) other
records pertaining to the individual’s performance as a pilot that are
maintained by the air carrier or person concerning--

(I) the training, qualifications,
proficiency, or professional competence of the individual, including comments
and evaluations made by a check airman designated in accordance with section
121.411, 125.295, or 135.337 of such title;

(II) any disciplinary action taken with
respect to the individual that was not subsequently overturned; and

(III) any release from employment or
resignation, termination, or disqualification with respect to employment.

 

(C)
National driver register records.--In accordance with section 30305(b)(8) of this title, from the
chief driver licensing official of a State, information concerning the motor
vehicle driving record of the individual.

 

49 U.S.C. § 44703(h)(1) (emphasis added).[7]

          Under the PRSA, Kitty Hawk was
prohibited from allowing Johnson to begin working as a pilot until it had
received Johnson’s personnel records for the preceding five years from Baylor. 
Baylor had actual or constructive knowledge that Kitty Hawk had to receive
Johnson’s personnel records to be able to allow him to work as a pilot.

          We conclude that Johnson’s affidavit
testimony that Kitty Hawk’s decision to dismiss Johnson was based on the
records and information that Baylor did, and did not, furnish, combined with
the applicable provisions of the PRSA and the undisputed fact that Baylor misrepresented
to Kitty Hawk that Johnson’s records were not readily available, is some
evidence—more than a scintilla—that a cause in fact of Kitty Hawk’s dismissal
of Johnson was the misrepresentation and information that Kitty Hawk received
from Baylor about Johnson’s personnel records.  There is some evidence that
Baylor’s misrepresentation about Johnson’s personnel records was a substantial
factor in Kitty Hawk’s dismissal of Johnson.

          Accordingly, it was error to grant
Baylor’s no-evidence motion for summary judgment on causation with respect to
Johnson’s tortious interference and negligent misrepresentation claims.  We
sustain Johnson’s first and third issues in this respect.

          Tortious Interference with
Prospective Contract:  Malice

          Baylor also moved for summary judgment
on Johnson’s claim for tortious interference with prospective contract on the
ground that there was no evidence on what Baylor asserted was the second
element of that claim:  that Baylor acted with malice as to Johnson’s
prospective employment with Kitty Hawk.  Specifically, Baylor asserted that
there is no evidence “that any act of Baylor was malicious and intervened with
the formation of the relationship. . . .”

          In so moving for summary judgment, and
in its appellate brief, Baylor, citing Richter v. Wagner Oil Co., states
that it moved for summary judgment on the “malice element.”[8] 
It argues that Johnson offered no evidence to show malice and cites section
41.001(7) of the Civil Practice and Remedies Code,[9]
asserting that the most that Johnson could show was that Baylor was negligent
in the way that it responded to Kitty Hawk’s record request.

As we have noted above, the elements of a claim
for tortious interference with prospective contract are: 

(1)      a reasonable probability
that the parties would have entered into a contractual relationship; 

 

(2)      an “independently tortious
or unlawful” act by the defendant that prevented the relationship from
occurring; 

 

(3)      the defendant did such act
with a conscious desire to prevent the relationship from occurring, or it knew
that the interference was certain or substantially certain to occur as a result
of the defendant’s conduct; and

 

(4)      the plaintiff suffered
actual harm or damage as a result of the defendant’s interference.

 

Ash,
54 S.W.3d at 414-15.  We disagree with the elements set out in Richter.

          Malice, or malicious intent, is not an
element of a claim for tortious
interference with prospective contract, and Johnson was not required to present
evidence of malice in response to Baylor’s no-evidence summary judgment
motion.  See id.  Summary
judgment on this ground was error, and we sustain Johnson’s first issue in this
respect.




          Release

Baylor asserted the defense of release as the summary
judgment ground in its traditional motion for summary judgment on Johnson’s
negligent misrepresentation.[10] 
Johnson’s third issue asserts that summary judgment on this ground was
improper.

Kitty Hawk’s
“Pilot Record Request Form” to Baylor included the following provision that had
been signed by Johnson:

In accordance with U.S.C. Title 49
§44936(f)(2)(B) this is to certify that I, __________ release from all
liability for any claim arising from or furnishing of the above information to
Kitty Hawk AirCargo, Inc., or the use of such information to Kitty Hawk
AirCargo, Inc. (other than a claim arising from furnishing information known to
be false and maintained in violation of a criminal statute.)

 

The PRSA’s written consent provision states:

(2) Written consent; release from
liability.--An air carrier making a request for records under paragraph (1)-- 

(A) shall be required to obtain
written consent to the release of those records from the individual that is the
subject of the records requested;  and 

(B) may, notwithstanding any other
provision of law or agreement to the contrary, require the individual who is
the subject of the records to request to execute a release from liability for
any claim arising from the furnishing of such records to or the use of such
records by such air carrier (other than a claim arising from furnishing
information known to be false and maintained in violation of a criminal
statute).

 

49 U.S.C. § 44703(h)(2).  The PRSA’s liability limitation states:

 

(1) Limitation on liability.--No
action or proceeding may be brought by or on behalf of an individual who has
applied for or is seeking a position with an air carrier as a pilot and who has
signed a release from liability, as provided for under paragraph (2), against--


(A) the air carrier requesting the
records of that individual under subsection (h)(1); 

(B) a
person who has complied with such request; 

(C) a person who has entered
information contained in the individual’s records;  or 

(D) an agent or employee of a person
described in subparagraph (A) or (B);

in the nature of an action for
defamation, invasion of privacy, negligence, interference with contract, or
otherwise, or under any Federal or State law with respect to the furnishing or
use of such records in accordance with subsection (h).

 

(2) Preemption.--No State or
political subdivision thereof may enact, prescribe, issue, continue in effect,
or enforce any law (including any regulation, standard, or other provision
having the force and effect of law) that prohibits, penalizes, or imposes
liability for furnishing or using records in accordance with subsection (h). 

 

(3) Provision for knowingly false
information.   Paragraphs (1) and (2) shall not
apply with respect to a person who furnishes information in response to a request
made under subsection (h)(1), that-- 

(A) the
person knows is false;  and 

(B) was
maintained in violation of a criminal statute of the United States. 

 

Id. § 44703(i) (emphasis added).

          Johnson asserts that his
PRSA release that Kitty Hawk sent to Baylor does not bar his negligent
misrepresentation claim because Baylor did not comply with Kitty Hawk’s
request, and the PRSA requires such compliance for the release and limitation
of liability to apply.  Section 44703(i)(1)(B) plainly provides that a person
such as Johnson (“an individual who has applied for or is seeking a position
with an air carrier as a pilot and who has signed a release from liability”)
may not bring an action against “a person who has complied with such request.” 
Johnson argues that, because Baylor did not comply with Kitty Hawk’s request
and failed to provide his personnel records, Baylor is not entitled to rely on his
PRSA release and liability limitation.

          In support, Johnson relies
on a Colorado case that apparently was one of first impression on the PRSA’s
liability limitation provision.  See Sky Fun 1 v. Schuttloffel, 27 P.3d
361 (Col. 2001).  In that case the pilot applicant, like Johnson, signed a
consent and release form under the PRSA that allowed the prospective employer
to obtain the pilot’s prior employment records.  Id. at 364.  The prior
employer responded to the request form with a note stating, “CALL ME!” but
providing no records.  The prospective employer called the prior employer, who
stated that the pilot should not be hired because he was a threat to passenger
safety.  The prior employer called back several times and urged the prospective
employer not to hire the plaintiff.  Eventually, the prior employer prepared
and sent a document titled “Termination Report” that detailed three incidents
where the pilot allegedly acted dangerously.  The pilot was hired anyway, and when
his prior employer sued him for property damage, the pilot counterclaimed for
defamation.  The trial court found for the pilot on his defamation claim, and
on appeal the prior employer argued that the PRSA consent and liability
limitation immunized it from liability for defamation.

          After discussing the
statutory provisions and legislative history of the PRSA, the Colorado Supreme
Court held that the PRSA liability limitation did not preempt the defamation
claim against the prior employer where the defamatory verbal statements were
not based on records supplied in response to the PRSA request, consent, and
release.  Id. at 365, 368.  

Applying
these principles of statutory construction, the common law of torts, federal
preemption, and federalism in the case before us, we hold that the limited
liability provision of the Act prevents suits based on the pilot records
provided to a potential employer, including the personnel records, and oral
statements made in connection with explaining the circumstances and contents of
such records.  This interpretation carries out the Act’s purpose of protecting
public safety in matters of air commerce.   On the other hand, the wording
of the Act and its committee report plainly demonstrate that Congress was also
solicitous of a pilot's reputation and employment opportunities. 
Protecting the public safety depends on the availability of qualified pilots.  Accordingly,
Congress determined that pilot hiring decisions should be based on facts
regarding the pilot’s training, skill, performance, and safety record.  The
pilot applicant must sign a release of the
records for the prospective employer and must anticipate that some verbal
interchange will occur between past and prospective employers concerning the
applicant and the records provided.

 

However, Congress did not broadly immunize oral
statements;  rather, it chose to utilize the term “record” as the operative
though undefined term in the limitation of liability provision.  We conclude
that the preemptive terms of the Act do not affect Colorado common law
defamation actions involving verbal assertions that the speaker knew to be
false or the speaker made in reckless disregard of the truth, when the
verbal statements are not based upon the previous employer’s records.  
Such is the case before us, which involves verbal statements calculated to ruin
Schuttloffel’s professional reputation and prevent his employment as a pilot.

 

Id.
at 368 (emphasis added).

We agree with the Colorado court’s construction
and application of the PRSA, which essentially is that a prior employer must
comply with the PRSA to avail itself of the act’s consent, release, and
liability limitation provisions.  The PRSA does not broadly immunize a prior
employer’s conduct in responding to a request for personnel records.  Instead,
it contains a quid pro quo:  if the prior employer complies with the request
for personnel records, its liability is limited.

Johnson wanted Baylor to provide his personnel
records to Kitty Hawk because he knew they would verify what he had already
told Kitty Hawk in his pre-employment interview.  He signed an authorization
and agreed to release Baylor from liability in contemplation of Baylor
providing Kitty Hawk with his records, which show that Baylor had terminated
him for reasons (i.e., obesity) other than his performance as a pilot. 
Johnson performed under the statute; Baylor did not.  Baylor responded by misrepresenting
that Johnson’s records were not available.

A person such as Johnson (“an individual
who has applied for or is seeking a position with an air carrier as a pilot and
who has signed a release from liability”) may not bring an action against “a
person who has complied with such request.”  49 U.S.C. § 44703(i)(1)(B). 
Baylor did not comply with Kitty Hawk’s request.  We thus hold that Baylor
cannot avail itself of Johnson’s PRSA release or the PRSA’s liability
limitation in the context of Johnson’s negligent misrepresentation claim, and
summary judgment on this ground was error.  We sustain Johnson’s third issue in
this respect.

Baylor also asserted that it was
entitled to summary judgment based on the release contained in the following
authorization:

I certify that information in this
Application and related documentation is true and complete without
qualification.  I understand that Kitty Hawk may investigate my work and
personal history and verify all data given on this application, on related
papers and in interviews, and I authorize Kitty Hawk to do the same.  This
inquiry may include information as to my character, general reputation and
personal characteristics, and I consent to the conduct of this inquiry and to
the consideration of any statements or references of former employers that are
given in response to the inquiry.  I authorize all individuals, schools and
employers given in response to the inquiry.  I authorize all individuals,
schools and employers named except as specifically limited on this Application,
to provide information requested about me, and I release them from liability
for damages in providing this information.  I understand and acknowledge
that any misrepresentation or omission of fact by me can result in immediate
discharge.  [Emphasis added.]

 

Releases that are general and
categorical are narrowly construed.  Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931, 938 (Tex. 1991); Boales v. Brighton Builders, Inc., 29
S.W.3d 159, 167 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  If a
release is capable of a certain or definite legal meaning or interpretation,
then effect must be given to the parties’ intentions as expressed within the
language of the release.  See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  A release will be construed in light of the facts and circumstances surrounding
its execution.  See Tricentrol Oil Trading, Inc. v. Annesley, 809 S.W.2d
218, 221 (Tex. 1991).   

As with the PRSA release, Johnson
argues that this general release was predicated on Baylor providing his
personnel records to Kitty Hawk.  We agree and will construe the release
narrowly and in light of the facts and circumstances of its execution.  Johnson
authorized Baylor to provide his personnel records and information and agreed
to release Baylor “from liability for damages in providing this information.” 
But as we emphasized above, the gist of Johnson’s negligent misrepresentation
claim is not that Baylor provided Kitty Hawk with negative information about
him,[11]
but that Baylor negligently misrepresented that Johnson’s records were not
available and did not provide them.  Like with the PRSA release, the purpose of
this general release was not realized, and we hold that it does not bar
Johnson’s negligent misrepresentation claim.  Summary judgment on this release
was error, and we sustain Johnson’s third issue in this respect.

Conclusion

          The trial court properly granted
summary judgment on Johnson’ defamation claim, and we affirm that ruling.  The
trial court erred in granting summary judgment on Johnson’s tortious
interference and negligent misrepresentation claims.  We reverse the trial
court’s rulings on those claims and remand the cause to the trial court for
further proceedings 
consistent with this opinion.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief
Justice Gray provides a Special Note to clarify his participation in this
case.)

Affirmed
in part and reversed in part; cause remanded

Opinion
delivered and filed February 15, 2006

[CV06]









    [1]       Johnson
unsuccessfully sued Baylor for disability discrimination.  See Johnson v. Baylor Univ., 129 F.3d 607 (5th Cir. 1997).

 





    [2]       The
records were sought under the Pilot Records Sharing Act (PRSA), 49 U.S.C. §
44936(f-h).  The operative provisions of this statute were later transferred to
49 U.S.C. § 44703, the Pilot Records Improvement Act (PRIA).  These provisions
require air carriers to obtain the complete personnel records of pilot
applicants who have been employed as a pilot with other air carriers for the preceding
five years.  See 49 U.S.C. § 44703(h-j).  Neither party asserts that the
current version of the PRSA’s pertinent provisions differ from the provisions
in effect in 1997, so we will apply the current version in this appeal.

 





    [3]       Ironically,
in the discrimination suit, Dr. Reynolds stated in an affidavit that “Johnson
could work as a pilot for an overnight delivery service or for an air freight
service . . . [or] for other companies which might have different standards for
their employees’ appearance, dress, grooming and grammar.”

 





    [4]       Asserting
federal preemption under the PRSA, Baylor removed this case to federal district
court, which denied Johnson’s motion to remand and granted Baylor’s motion to
dismiss, but on appeal the Fifth Circuit reversed the district court, holding
that the PRSA did not preempt Johnson’s state law claim and that Baylor’s
removal was improper.  See Johnson v. Baylor Univ., 214 F.3d 630 (5th
Cir. 2000).





[5]           Section 552 narrows the class of
potential claimants and requires that any claimant justifiably rely on the
alleged negligent misrepresentation.  McCamish,
991 S.W.2d at 793-94.  Under section 552(2), liability is limited to
loss suffered:

 

(a)  by the person or one of a limited group of
persons for whose benefit and guidance [one] intends to supply the information
or knows that the recipient intends to supply it; and (b) through reliance upon
it in a transaction that [one] intends the information to influence or knows
that the recipient so intends or in a substantially similar transaction.

 

Id. at 794
(quoting Restatement (Second) of Torts
§ 552(a)).





    [6]       Only
the no-evidence motion was granted on Johnson’s tortious interference claims.





    [7]       The
purpose of the PRSA is to promote air safety through the hiring of qualified
pilots, and it accomplishes its goal by ensuring the free exchange of pilot’s
records among pilot employers.  Sky Fun 1 v. Schuttloffel, 27 P.3d 361,
367 (Col. 2001).





    [8]       Richter
states that the
elements of tortious interference with prospective contract are:

 

(1)         a reasonable
probability the plaintiff would have entered a contractual relationship with a
third-party;

(2)         an intentional and
malicious act that intervened with the formation of that relationship;

(3)         the defendant
lacked privilege or justification to interfere; and

(4)                
actual
damage, loss, or harm resulted from the defendant’s interference.

 

Richter v.
Wagner Oil Co., 90 S.W.3d 890,
897 (Tex. App.—San Antonio 2002, no pet.).

 





    [9]       Malice
is defined as “a specific intent by the defendant to cause substantial injury
or harm to the claimant.”  Tex. Civ.
Prac. & Rem. Code Ann. § 41.001(7) (Vernon Supp. 2005).





    [10]         In its traditional motion for summary judgment
on Johnson’s tortious interference claims, Baylor moved for summary judgment on
its defenses of release and consent, but the trial court did not grant Baylor’s
traditional motion; it only granted Baylor’s no-evidence motion on Johnson’s
tortious interference claims.





    [11]      For
this reason, we find Smith v. Holley, 827 S.W.2d 433 (Tex. App.—San
Antonio 1992, writ denied), relied on by Baylor, to be factually inapposite. 
Unlike the plaintiff there, Johnson’s claim is not based on the content of the
information that the prior employer provided or the mere fact that the prior
employer provided information when the plaintiff claimed that it should not
have.  Johnson’s claim is based on Baylor’s negligent misrepresentation that
his records were not available and the fact that Baylor did not provide them;
Johnson was relying on Baylor to produce his records.